UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLAUDIA HOLTON,

        Plaintiff,                           Case No. 1:16-CV-393

v.

                                           HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,
_____/

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

### **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th

Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-three years of age on the date of the ALJ's decision. (PageID.33, 105.) She previously obtained a GED and had been employed as a certified nurse aide and as a stocker. (PageID.57, 63.) Plaintiff applied for benefits on July 10, 2013, alleging that she had been disabled since

January 31, 2013, due to several impairments.[1] (PageID.105–106, 166–171.) This application was denied on August 14, 2013, after which time Plaintiff requested a hearing before an ALJ. (PageID.116–119, 122–124.) On August 8, 2014, Plaintiff appeared with her representative before ALJ James Prothro for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.52–89.) On October 10, 2014, the ALJ issued his written decision, concluding that Plaintiff was not disabled. (PageID.33–51.) On February 16, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.26–29.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[2] If the Commissioner can make a dispositive finding at any

---

[1] The list of Plaintiff's alleged complaints includes: sleep apnea, pulmonary hypertension, peripheral artery disease, COPD, allergic rhinitis, GERD, tobacco abuse, hyperlipemia, arthopathy–unspecified, dysphagia, menopause, adenocarcinoma of the colon, alcohol abuse, depression, and anxiety. (PageID.105–106.)

[2]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff's claim failed at step five. At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.38.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of: (1) history of osteoarthritis of the shoulders and knees; (2) degenerative disc disease status-post cervical spine discectomy and fusion with second surgery because of pseudoarthrosis; (3) right knee torn meniscus; and (4) depression. (PageID.38.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.39–41.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

> light work as defined in 20 CFR 404.1567(b) except for occasional climbing and balancing, and she is limited to simple work and not able to do any fast paced work.

(PageID.41.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform

4

any of her past relevant work. (PageID.45–46.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work in the following representative jobs: assembler of small parts (6,000 Michigan positions), inspector (7,000 Michigan positions), and bench assembler (8,000 Michigan positions). (PageID.82.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.47.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from January 31, 2013, through October 10, 2014, the date of decision. (PageID.47.)

## DISCUSSION

Plaintiff's sole claim of error is that the ALJ failed to articulate evidentiary support for his factual finding regarding Plaintiff's RFC. Specifically, she argues that the ALJ should have included a limitation on her ability to use both her upper extremities for reaching.[3] (PageID.691–694.) RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). As noted above, the ALJ found that Plaintiff retained the RFC for a limited range of light work. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R.

---

[3] Internal agency regulations define Reaching as "[e]xtending the hands and arms in any direction." POMS DI 25001.001, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001.

5

§ 404.1567(b).

In his decision, ALJ Prothro provided a lengthy discussion of the medical record regarding Plaintiff's neck and shoulder pain. As the ALJ indicated, Plaintiff underwent surgery on her cervical spine on January 31, 2013. (PageID.331.) A week following surgery, her surgeon, Dr. Vicente Gracias, reported she was happy with the results. Her radicular pain was gone. (PageID.320.) Similar satisfactory reports were given in March 2013. (PageID.319.) In April she reported a little soreness in her neck when driving, but Dr. Gracias believed he pain would improve with time. (PageID.318.) In May, Plaintiff reported she had recently fallen, but she was happy with the results of her surgery. Exam results were normal. (PageID.317.) In June, Plaintiff felt that she could handle her job, and Dr. Gracias discharged her back to normal work. (PageID.316.) Later that month, Plaintiff reported she was able to clean her garage and do lifting, but when she returned to work, she was required to lift individuals and weights weighing from one hundred to three hundred pounds, and as a consequence redeveloped neck pain. On exam, her motor, sensory, and deep tendon reflex exams were still normal. Additional X-Rays were ordered and Plaintiff was temporarily taken off work. (PageID.315.) The following month, physical exam results were again within normal limits. The X-Ray was satisfactory, however Plaintiff continued to complain of neck pain, particularly when lifting, pulling or pushing heavy individuals. (PageID.314.) She was kept off work, and physical therapy was ordered. (PageID.314.) Plaintiff complained of continued pain with her primary care physician. (PageID.345.) On exam, she had limited range of motion of her neck, but good shoulder and elbow range of motion. (PageID.347.) Consequently, as the ALJ noted, Plaintiff appeared to have been doing well, until she returned to her past work and performed the heavy lifting that was required with that work.

In the following months, Plaintiff continued to have normal motor, sensory, and deep tendon reflex exams. A EMG test was normal. (PageID.366.) In September, however, she reported her pain returned after she was hit in the head by a patient. (PageID.376.) That said, a Spurling test was negative and she still had full motor strength.[4] (PageID.378.) In October, she met with a second surgeon. She had pseudoarthritis, and the surgeon discussed a revision of the fusion from her prior surgery. (PageID.455.) Plaintiff elected to undergo a second surgery, which took place on December 6, 2013. (PageID.524.) In January 2014, Plaintiff reported her neck pain was definitely better. (PageID.553.) In March, 2014, she felt her neck pain and arm pain were "completely" better, though she had occasional headaches and neck pain. She was interested in returning to work. She was off all narcotics. (PageID.559, 563.) In May, it was reported she had not done any physical therapy after her second surgery. She felt increasing pain with house and yard work. (PageID.604.) She was referred for osteopathic manipulative treatment. (PageID.607.) In June, she reported her neck and arm pain was better. (PageID.669.) She still complained of headaches, but overall, she was found to be "doing fairly well." (PageID.669.) It was stated that "as the fusion settles up stronger, she may find that [the headaches] would improve." Plaintiff was also referred for another round of manipulation on her neck. (PageID.669.) All this provides substantial evidence in support of the ALJ's decision. Clearly, Plaintiff is unable to perform her past work. And the Court does not doubt that Plaintiff's impairments impose a certain amount of limitation on her capabilities. However the consistent normal physical exam results and Plaintiff's reports of pain relief

---

[4] A positive Spurling's test suggests the presence of a cervical nerve root disorder. Thomas W. Woodward, M.D., and Thomas M. Best, M.D., Ph.D., *The Painful Shoulder: Part I Clinical Evaluation*, AMERICAN FAMILY PHYSICIAN, May 15, 2000, *available at*, http://www.aafp.org/afp/20000515/3079.html (last visited Jan. 18, 2017).

following surgery all support the ALJ's decision that she was nonetheless capable of performing light work with, among other things, no fast paced work.

None of Plaintiff's arguments compel a different result. She begins by claiming the ALJ should have provided "good reasons" for rejecting the opinion of Ms. Therese Roys, a physician's assistant, and Dr. Steven Bargwell. (PageID.692–693.) Plaintiff specifically argues the ALJ should have adopted their opinion that Plaintiff could never use either of her arms for reaching, including overhead reaching. (PageID.365.) Plaintiff's argument here, including her entire argument, is completely lacking in legal authority and borders on waiver. By referring to an alleged lack of "good reasons," however, the Court presumes Plaintiff believes the ALJ's discussion of this opinion violates the treating physician rule. The Court disagrees. There are several reasons why this is so. First of all, the form was clearly filled out by Ms. Roys, not Dr. Bargwell. The opinion was signed by Ms. Roys on January 9, 2014, and by Dr. Bargwell on January 20, 2014. And there is no corresponding treatment note from Dr. Bargwell on either of the dates the opinion was signed. As courts in this district have previously stated, where, as here, a physician simply "adopts" an opinion rather than offering his or her own opinion, "there arguably exists no treating physician opinion to which the [treating physician] standard even applies." *Belding v. Comm'r of Soc. Sec.*, No. 1:13–cv–855, 2014 WL 5039443, at * 8 (W.D. Mich. Sept.24, 2014). That is, the addition of Dr. Bargwell's signature did not transform Ms. Roy's opinion into one from a treating source. Moreover, Ms. Roys' treatment note from January 9, 2014, indicates that the form was "completed based on [t]he patient's estimation and scanned into the chart." (PageID.541.) The Sixth Circuit has indicated that such a statement which "merely regurgitates" a claimant's self-described symptoms is not a medical opinion at all. *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (citing 20

8

C.F.R. § 404.1527(a)(2)).

In any event, the ALJ provided sufficient consideration of this statement and articulated several reasons for assigning it only limited weight. The ALJ noted it was inconsistent with the objective exam findings of Dr. Gracias, who consistently found normal results during physical exams. (PageID.44.) Additionally, as the ALJ observed, Plaintiff was able to perform some driving. An activity the parties do not dispute requires reaching. However limited Plaintiff might be here, it is inconsistent with Ms. Roys' opinion that Plaintiff was incapable of doing any reaching, and provides sufficient rationale for discounting her opinion. For all the above reasons, the Court finds no violation of the treating physician rule.

Plaintiff's remaining arguments fare no better. Plaintiff claims that the ALJ's decision is unsupported by substantial evidence due to the use of a single decision maker and that the meaning of "no fast paced work," when used in the hypothetical to the VE, was ambiguous. (PageID.693.) Both of these arguments have been waived. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). Even if these argument had not been waived, they would fail. It is the ALJ who has the ultimate responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1545(a); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [their] residual functional capacity.") It not the ALJ's burden to seek out medical opinions

to prove or disprove a disability claim. *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Rather, it is Plaintiff's obligation to provide evidence to support her claim of disability. 20 C.F.R § 404.1512(c). The medical evidence in this case has not confirmed the presence of a disabling impairment. As to the latter argument, Plaintiff's representative clarified any ambiguity at the hearing by asking the VE for the definition of fast-paced work. The VE responded with "[w]ork that's done rapidly." If Plaintiff's representative was not satisfied with this answer he could have, but did not, question the VE further.

In sum, the Court finds the ALJ's RFC determination is well supported by substantial evidence. Plaintiff's claim of error is denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is supported by substantial evidence and therefore will be **AFFIRMED.**

The Court further determines that appeal of this matter would not be taken in good faith. *See Smith v. Comm'r of Soc. Sec.*, 1999 WL 1336109, at *2 (6th Cir. 1999); *Leal v. Comm'r of Soc. Sec.*, No. 3:14 CV 285, 2015 WL 731311, at *2 (N.D. Ohio Feb. 19, 2015).

A separate judgment shall issue.

Dated:  January 23, 2017                              /s/ Paul L. Maloney
                                                                      PAUL L. MALONEY
                                                                      United States District Judge